**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| UNILOC USA, INC. and UNILOC LUXEMBOURG, S.A.,<br><br>           Plaintiffs,<br><br>   v.<br><br>APPLE INC.,<br><br>           Defendant. | CASE NOS.  1:18-cv-158; 1:18-cv-159; 1:18-cv-161; 1:18-cv-163; 1:18-CV-00164; 1:18-cv-00166; 1:18-cv-00293; 1:18-cv-00296 |

**APPLE INC.'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     PROCEDURAL AND FACTUAL BACKGROUND ....................................... 2

    A.      Uniloc's Cases Against Apple In The WDTX .................................... 2

    B.      Ten Of Uniloc's EDTX Apple Cases Have Been Transferred To The NDCA ..................................................................................................... 3

    C.      Uniloc .................................................................................................... 4

    D.      Apple ..................................................................................................... 5

III.    LEGAL STANDARD ......................................................................................... 6

IV.     THE NDCA IS CLEARLY THE MORE CONVENIENT VENUE ................ 7

    A.      The Private Interest Factors Favor Transfer ..................................... 7

        1.      Relative Ease of Access to Sources of Proof ............................ 7

        2.      Availability of Compulsory Process ....................................... 11

        3.      Attendance of Willing Witnesses ............................................ 12

        4.      All Other Practical Problems that Make Trial of a Case Easy Expeditious and Inexpensive ................................................... 13

    B.      The Public Interest Factors Favor Transfer ..................................... 14

        1.      Court Congestion Favors Transfer .......................................... 15

        2.      Local Interests Strongly Favor Transfer ................................. 15

        3.      Familiarity With The Governing Law And Conflicts Of Law Are Neutral ...................................................................................... 15

V.      CONCLUSION ................................................................................................. 15

i

WEST\280888337.7

## TABLE OF AUTHORITIES

Page

CASES

*Aguilar-Ayala v. Ruiz*,
   973 F.2d 411 (5th Cir. 1992) ................................................................11

*Auto-Drill, Inc. v. Nat'l Oilwell Varco, L.P.*,
   No. 6:15-cv-00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) ....................................7, 12

*Collaborative Agreements, LLC. V. Adobe Systems, Inc.*,
   No. 1-14-CV-356, 2015 WL10818739 (W.D. Tex. Aug. 21, 2015) ................................8, 10

*DataQuill, Ltd. v. Apple Inc.*,
   No. 13-ca-706, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ................................7

*Gemalto S.A. v. CPI Card Grp. Inc.*,
   No. 15-CA-0910, 2015 WL 10818740 (W.D. Tex. Dec. 16, 2015) ........................11

*In re Eli Lilly & Co.*,
   541 F. App'x 993 (Fed. Cir. 2013) ........................................................14

*In re EMC Corp.*,
   501 F. App'x 973 (Fed. Cir. 2013) ........................................................10

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)..............................................7, 11, 12, 13

*In re Hoffman-La Roche, Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ..........................................................11

*In re TS Tech. USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008)..........................................................15

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ................................................6, 7, 12, 13

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ............................................................6, 7

*Peak Completion Techs., Inc. v. I-TEC Well Solutions, LLC*,
   2013 WL 12121002 (W.D. Tex. June 26, 2013) ........................................13

*Polaris Innovations Ltd. v. Dell, Inc.*,
   No. 16-cv-451, 2016 WL 7077069 (W.D. Tex. Dec. 5, 2016)....................10, 11, 13

*Transunion Intelligence L.L.C. v. Search America, Inc.*,
   No. 2:10-CV-130, 2011 WL 1327038 (E.D. Tex. Apr. 5, 2011)..........................14

ii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Uniloc USA Inc., et al. v. LG Elec. USA, et al.*,
No. 4:17-cv-00858, Dkt. No. 30 (N.D. Tex. May 14, 2018) ...................................................10

*Via Vadis, LLC v. Netgear, Inc.*,
No. 14-cv-809, 2015 WL 10818675 (W.D. Tex. July 30, 2015)............................................13

*Wet Sounds, Inc. v. Audio Formz, LLC*,
No. 17-cv-141, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017), report and
recommendation adopted, No. 1:17-cv-141, 2018 WL 1219248 (W.D. Tex.
Jan. 22, 2018)........................................................................................................7, 11, 13, 15

*XY, LLC v. Trans Ova Genetics, LC*,
16-ca-00447, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) .........................................8, 13, 14

**STATUTES**

28 U.S.C. § 1404(a) ...................................................................................................................1, 13

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 45(c)(1)(A) ........................................................................................................11

Fed. R. Civ. Proc. 45(c)(1)(B) ........................................................................................................11

iii

Pursuant to 28 U.S.C. § 1404(a), Apple hereby moves to transfer the following actions to the Northern District of California (NDCA): 1:18-cv-00158, 1:18-cv-00159, 1:18-cv-00161, 1:18-cv-00163, 1:18-cv-00164, 1:18-cv-00166; 1:18-cv-00293 and 1:18-cv-00296 (collectively, the "WDTX Uniloc Cases").

## I.     INTRODUCTION

Under a straightforward application of the *Volkswagen* factors, the WDTX Uniloc Cases should be transferred to the NDCA because it is the clearly more convenient venue.  These cases have no connection to the Western District of Texas (WDTX), but have very significant connections to the NDCA.  Indeed, with regard to the most important factor in the analysis – the location of the relevant witnesses – with the exception of one witness, there are <u>none</u> in the WDTX, but numerous in the NDCA.  On that basis alone, the WDTX Uniloc Cases belong in the NDCA, but the other *Volkswagen* factors also weigh in favor of transfer (or are neutral), and none weighs against transfer.

This is not Apple's first rodeo with Uniloc.  Between June 2016 and August 2017, Uniloc filed <u>twelve</u> cases against Apple in the Eastern District of Texas (EDTX).  Over Uniloc's strenuous objections, Judge Gilstrap ordered 10 of those cases transferred to the NDCA pursuant to Section 1404(a).  Only two cases now remain in the EDTX, and both are stayed pending *inter partes* review.

Judge Gilstrap's reasoning in transferring the EDTX Uniloc cases to the NDCA applies equally here.  Indeed, if anything, there is even greater support for transfer here given the judicial economy that may be achieved by having all (or at least almost all) of the Uniloc cases against Apple handled in a single venue (the NDCA).  Accordingly, Apple respectfully requests that the Court transfer the WDTX Uniloc Cases to the NDCA.

1

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### A.    Uniloc's Cases Against Apple In The WDTX

Uniloc filed six of the WDTX Uniloc Cases against Apple on February 22, 2018, alleging infringement of seven patents.[1]  On April 9, 2018, Uniloc filed two additional cases against Apple in the WDTX, alleging infringement of two additional patents.[2]  On April 12, 2018, Uniloc amended one of the Complaints (in the -166 case) to allege infringement of an additional two patents.  1:18-cv-166 Dkt. 26.  On May 30, 2018, Uniloc filed Amended Complaints in all cases except the -166 case in an attempt to address Apple's motions to dismiss.[3]  Apple is concurrently moving to transfer all of these cases to the NDCA.

Despite Uniloc's vague infringement allegations, and based on Apple's current understanding, it appears the accused technology can be grouped into the following five distinct categories (collectively,  the "Accused Technology"):

| Case No. | Asserted Patents | Accused Technology |
|---|---|---|
| 1:18-cv-159<br>1:18-cv-163<br>1:18-cv-164 | U.S. Patent Nos. 7,587,207 ("'207 patent"); 7,020,106 ("'106 patent"); 6,993,049 ("'049 patent") | Wirelessly sending and receiving messages between accused devices using communication modes and links in accordance with Bluetooth 3.0 + HS and above; sending inquiry messages in accordance with Bluetooth 4.0 and above that include location or polling data: and sending broadcast messages that include data for polling another device for transmitting data from the polled device to the device sending the broadcast messages ("Bluetooth Accused Technology"). |

---

[1] These first six WDTX Uniloc Cases are: 1:18-cv-00158, 1:18-cv-00159, 1:18-cv-00161, 1:18-cv-00163, 1:18-cv-00164, and 1:18-cv-00166.

[2] These two WDTX Uniloc Cases are: 1:18-cv-00293 and 1:18-cv-00296.

[3] The Amended Complaints are: 1:18-cv-158 Dkt. 33, 1:18-cv-159 Dkt. 32, 1:18-cv-161 Dkt. 32, 1:18-cv-163 Dkt. 32, 1:18-CV-00164 Dkt. 31, 1:18-cv-00293 Dkt. 29 and 1:18-cv-00296 Dkt. 31.

2

| 1:18-cv-158 1:18-cv-161 | U.S. Patent Nos. 6,868,079 ("'079 patent); 7,167,487 ("'487 patent") | Technology for communicating between certain Apple devices and cellular base stations related to certain 3G and LTE standards ("Cellular Baseband Accused Technology"). |
|---|---|---|
| 1:18-cv-166 | U.S. Patent Nos. 7,969,925 ("'925 patent"); 8,018,877 ("'877 patent"); 8,406,116 ("'116 patent"); 8,369,298 ("'298 patent") | Negotiating and establishing connections between devices using Apple Push Notification, Continuity, FaceTime and iMessage services ("APNS Accused Technology"). |
| 1:18-cv-293 | U.S. Patent No. 6,836,654 ("'654 patent") | Antitheft measures, including the ability of users to lock devices on command or after an elapsed time and unlock their device with a passcode ("Passcode Lock Accused Technology"). |
| 1:18-cv-296 | U.S. Patent No. 6,467,088 ("'088 patent") | "The reconfiguration of the device," such as, for example, "the installation or update of an Apple App Store application on the device" ("App Store Update Accused Technology") |

*See* Compls. at ¶¶ 13-14 (1:18-cv-166 Compl. at ¶¶ 14, 29, 44, 59); Declaration of Michael Jaynes In Supp. of Mot. to Transfer ("Jaynes Decl."), ¶¶ 7-20.  Across all eight cases, Uniloc has accused various Apple products, including iPhones, iPads, MacBooks, Apple Watches, iPods, Apple TVs and Magic Mouses and Trackpads (collectively,  the "Accused Products").  *See* Compls. at ¶ 12 (1:18-cv-166 Compl. at ¶¶ 13, 28, 43, 58); Jaynes Decl., ¶ 6.

**B.     Ten Of Uniloc's EDTX Apple Cases Have Been Transferred To The NDCA**

Uniloc filed its first action against Apple in the EDTX in June 2016 (2:16-CV-638 ("Uniloc 1")).  Apple filed a motion to transfer Uniloc 1 to the NDCA; however, based on Uniloc's representations (later shown to be inaccurate), Judge Gilstrap denied Apple's transfer motion.  2:16-CV-638 Dkt. No. 27.  The case was stayed shortly thereafter pending *inter partes* review.  *Id.* at Dkt. No. 29.

Uniloc filed its next action against Apple in the EDTX in April 2017, also before Judge Gilstrap ("Uniloc 2").  18-cv-357 Dkt. No. 1.  Apple moved to transfer Uniloc 2 to the NDCA,

3

along with a motion seeking venue discovery.  In its motion, Apple noted that Uniloc's prior representations opposing transfer were inconsistent with a host of public evidence.  *Id.* at Dkt. No. 27.  And, in fact, the subsequent venue discovery revealed numerous Uniloc contradictions. In noting the inconsistencies, the Court stated that it "finds such contradictory representations troubling, particularly because they are not isolated exceptions."  *See* Declaration of John Guaragna In Supp. of Mot. to Transfer ("Guaragna Decl.") Ex. 1, 18-cv-357 Dkt. No. 104, p. 16 ("Gilstrap Order").  The Court transferred Uniloc 2 to the NDCA, noting that "the significant number of both party and non-party witnesses in California have shown that the convenience of the witnesses weighs strongly in favor of transfer."  *Id.* at 21.

Between May and August of 2017, Uniloc filed nine additional actions against Apple in the EDTX.[4]  These cases were consolidated and then transferred to the NDCAL for the same reasons as set forth in Uniloc 2.  *See* Guaragna Decl., Ex. 2, 2:17-CV-00470 Dkt. No. 71.

### C.     Uniloc

The Complaint in this case identifies two plaintiffs.  The first, Uniloc Luxembourg, S.A., is a Luxembourg entity with its principal place of business in Luxembourg.  Compl., at ¶ 3.  The second, Uniloc USA, Inc., is a Texas company that is registered to do business in California. Guaragna Decl., Ex. 3, Uniloc Franchise Tax Acc't Status.  Uniloc USA maintains its "principal business office in California" at 620 Newport Center Dr., Suite 360, in Newport Beach, California.  *Id.*, Ex. 4, 5/8/18 Statement of Information.  As recently as January 2016, Uniloc's founder, Craig Etchegoyen, declared under oath that Uniloc USA had a "headquarter" in Irvine, California.  *Id.*, Ex. 5, *Uniloc v. Broderick* Etchegoyen Decl. ¶ 2.  Neither Uniloc plaintiff has any facilities or presence in the WDTX.  While Uniloc maintains a Plano, Texas office (outside

---

[4] 18-cv-358, 18-cv-359, 18-cv-360, 18-cv-361, 18-cv-362, 18-cv-363, 18-cv-364, 18-cv-365, and 18-cv-572.

4

of the WDTX), discovery in Uniloc 2 "revealed that there are no full-time employees working out of Uniloc's Plano office" with relevant knowledge.  *Id.*, Ex. 1, Gilstrap Order at 6.

Despite Uniloc's initial statements to the Court, venue discovery in the EDTX actions revealed that Uniloc has multiple connections to California.  First, Uniloc maintains an office in Newport Beach, California that hosted "around 100 top level strategy meetings" in the last three years alone, and Uniloc's Luxembourg's CEO holds monthly meetings in California with Uniloc's CFO.  *Id.* at 6.  Second, Uniloc's CEO, Mr. Etchegoyen, has maintained a residence in Newport Beach, California since 2010.  *Id.* at 4-5.  Third, Uniloc's CFO, Mr. Turner, resides and works in California.  *Id.* at 5.  Fourth, Uniloc's President and General Counsel, Mr. Burdick, spends only "about 1/3 of his time in Plano, Texas" with the remaining time being spent in Idaho and California.  *Id.*  Fifth, Uniloc's former IP counsel, Tanya Kiatkulpiboone, resides in the NDCA.  *Id.*

### D.    Apple

Apple is a California corporation headquartered in Cupertino (in the NDCA) since 1976.  Jaynes Decl., ¶ 4.  Apple's management and primary research and development facilities are located in Cupertino.  Jaynes Decl., ¶ 5.  While Apple sells its products throughout the United States, the research, design and development of the Accused Technology takes place primarily in the NDCA.  Jaynes Decl., ¶¶ 21-24.  Based on Apple's understanding of Uniloc's claims, with the exception of one witness, only Apple employees located in or around Cupertino have designed and developed the Accused Technology.  Jaynes Decl., ¶ 40.  In this regard, the following is a list of Apple employees likely to be witnesses in this case:

- Bluetooth Accused Technology: Jason Giles and Rob Mayor;

5

- Cellular Baseband Accused Technology: Rebecca Ling, Zhu Ji, Srinivasan Nimmala and Xiantao Sun;

- APNS Accused Technology: Nick Fraioli and Gokul Thirumalai;

- App Store Accused Technology:  Dana DuBois;

- Passcode Lock Accused Functionality: Paul Chinn;

- Marketing: Supriya Gujral and Deidre Caldbeck;

- Intellectual Property Licensing: Heather Mewes and Patrick Murphy; and

- Finances: Michael Jaynes.

Jaynes Decl., ¶¶ 31-44.  Each of these individuals and the current, relevant teams are located in the NDCA, and none are located in the WDTX.  *Id.*

## III.   LEGAL STANDARD

Under section1404(a), the moving party must first show that the claims "might have been brought" in the proposed transferee district.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-13 (5th Cir. 2008) ("*Volkswagen II*").  This first requirement is not in dispute.[5]  Second, the movant must show "good cause" by demonstrating that the "transferee venue is clearly more convenient" than the transferor district.  *Id.* at 315.  As shown below, that is the case here.

In evaluating convenience, the district court weighs both private and public interest factors.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*") (citations omitted).  The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case

---

[5]Apple's headquarters are in the NDCA and Uniloc has not disputed that Apple can be sued there.  Jaynes Decl., ¶ 4; Guaragna Decl., Ex. 1, Gilstrap Order at 10.

easy, expeditious and inexpensive." *Id.* The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law." *Id.* Typically, "[t]he convenience of the witnesses is probably the single most important factor in transfer analysis ." *Auto-Drill, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:15-cv-00091, 2016 WL 6909479, at *7 (W.D. Tex. Jan. 28, 2016).[6]

## IV.   THE NDCA IS CLEARLY THE MORE CONVENIENT VENUE

### A.   The Private Interest Factors Favor Transfer

All four private interest factors favor transfer.

#### 1.   Relative Ease of Access to Sources of Proof

"The Federal Circuit has observed that '[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer,' and therefore the location of the defendant's documents tends to be the more convenient venue." *DataQuill, Ltd. v. Apple Inc.*, No. 13-ca-706, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (*quoting In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)); *see also Wet Sounds, Inc. v. Audio Formz, LLC*, No. 17-cv-141, 2017 WL 4547916, at *2 (W.D. Tex. Oct. 11, 2017), report and recommendation adopted, No. 1:17-cv-141, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018) ("the Fifth Circuit clarified that despite technological advances that make the physical location of documents less significant, the location of sources of proof remains a 'meaningful factor in the analysis.'") (*quoting Volkswagen II*, 545 F.3d at 315). Additionally, "in determining the ease of access to sources of proof, the Court will look to the location where the allegedly infringing products were

---

[6]The plaintiff's choice of venue is not a distinct factor in the analysis. *Volkswagen II*, 545 F.3d at 314-15.

7

researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC,* 16-ca-00447, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017) (citation omitted); Guaragna Decl., Ex. 14, Box Transfer Order at 4-5 (finding that "it would be more inconvenient for Box to litigate in [WDTX] than for Uniloc to litigate in Northern California"); *Collaborative Agreements, LLC. V. Adobe Systems, Inc.*, No. 1-14-CV-356, 2015 WL10818739 *4 (W.D. Tex. Aug. 21, 2015).

The Accused Technology was designed and developed by Apple employees in the NDCA.  Jaynes Decl. ¶ 21.  All of the documents relating to the design and development of the Accused Technology were generated in or around Cupertino, and are stored there.  *Id*. at ¶ 46. Even beyond the Accused Technology, the primary research, design, development, facilities and engineers for the Accused Products are located in or near Cupertino, California, along with Apple's records related to the research and design of the Accused Products.  *Id* at ¶ 23.  All of the documents generated concerning the marketing, sales and financial information for the Accused Products are located in or around Cupertino, California.  *Id* at ¶ 47.  As such, the overwhelming majority of the sources of proof regarding the Accused Products and the Accused Technology are in the NDCA.

In addition, Uniloc USA's former Intellectual Property Counsel, Tanya Kiatkulpiboone, resides in the NDCA.  Guaragna Decl., Ex. 6, Kiatkulpiboone Linkedin.  Documents relating to Ms. Kiatkulpiboone likely will be found in the NDCA where she resides.  Apple also has identified additional third-parties located in the NDCA who also presumably will have documents located there, including: Daniel Lin – the inventor and prosecution attorney on four of the asserted patents; Frederick Kim – prosecution attorney on three of the asserted patents; John Stattler – prosecution attorney on at least two of the asserted patents; and Rahul Shekher –

8

prosecution attorney on at least one of the asserted patents.   Guaragna Decl., Exs. 7-9, USPTO Practitioner Information.

Moreover, Qualcomm and Intel are relevant third-parties relating to the Cellular Baseband Accused Technology.  The functionality of the MAC and PHY layers that Uniloc has accused of infringement is implemented in the baseband processors, which are made by Qualcomm and Intel.  Qualcomm is headquartered in San Diego, California (in the Southern District of California) and Intel is headquartered in Santa Clara, California (in the Northern District of California).  Guaragna Decl., Exs. 10, 11, Qualcomm and Intel contact information. To the extent necessary, Apple employees interact with Qualcomm and Intel concerning the Cellular Baseband Accused Technology.  Those Qualcomm employees are located in the NDCA and in San Diego, California (in the SDCA) and those Intel employees are located in the NDCA, San Diego, California (in the SDCA) or overseas.  Jaynes Decl., ¶¶ 33-35, 36.  None of those communications have taken place with a Qualcomm or Intel employee in Texas.  *Id.*

Conversely, there are no unique, relevant sources of proof in the WDTX.  First, Uniloc has no physical presence in the WDTX.  Second, Apple is not aware of any third party witnesses who reside in the WDTX.  Third, with the exception of one witness, Apple does not have any relevant employees in the WDTX, nor does it maintain relevant documents in the WDTX.[7]

---

[7] With respect to the -166 case, Apple has identified one employee who recently moved to Apple's Austin facility from the NDCA who previously had been involved in the development of Apple Continuity – one of the many accused functionalities.  Jaynes Decl., ¶ 45.  That employee, Stuart Montgomery, has not worked on Apple Continuity since December 2017 and has no relevant unique knowledge that other Apple engineers in the NDCA do not also possess.  *Id.* Moreover, in addition to the five Apple witnesses in the NDCA relevant to the -166 case, Apple has identified four third-party witnesses, including the sole named inventor, who reside in the NDCA.  As such, the presence of one engineer in WDTX who has not worked on the accused technology since December 2017 does not tip the balance against transfer.  Furthermore, because motions to transfer venue should be decided based on "the situation which existed when suit was

9

Jaynes Decl., ¶¶ 46-50. *See Uniloc USA Inc., et al. v. LG Elec. USA, et al.*, Case No. 4:17-cv-00858, Dkt. No. 30 at 7 (N.D. Tex. May 14, 2018) (granting defendants' motion to transfer, noting "no document or piece of evidence resides" in the chosen forum).

When, as is the case here, the bulk of relevant evidence and witnesses are located in the requested transfer district, the ease of access to evidence factor weighs in favor of transfer.  In *Polaris Innovations Ltd. v. Dell, Inc.*, No. 16-cv-451, 2016 WL 7077069 (W.D. Tex. Dec. 5, 2016), the defendants moved to transfer the patent infringement case from the WDTX to the NDCA, where a majority of the evidence and engineers were located.  The defendant had an Austin office with 300 employees, and identified at least one Austin-based engineer as being heavily involved in the design and development of at least one of the accused products.  *Id.* at *3. However, the Court still found that the bulk of the evidence was in California, and that this factor thus weighed in favor of transfer:

> Though a potentially relevant NVIDIA engineer is based in Austin, this engineer alone does not indicate that evidence of NVIDIA's infringement will be relatively easier to access in Austin than in Santa Clara—this engineer reports to higher-ups in California, and NVIDIA's presence in California dwarfs its presence in Texas, even considering this engineer. The most important people to NVIDIA's accused products (the seven Chip Managers) are in Santa Clara; NVIDIA's Santa Clara headquarters houses more than 10 times the number of employees than the Austin office and more than 20 times the number of employees who have knowledge of the accused products; the bulk of NVIDIA's marketing is done from Santa Clara. Insofar as NVIDIA is concerned, the Northern
>
> District of California is clearly the more convenient forum in terms of access to evidence.

---

instituted," this individual's current presence in the WDTX is legally irrelevant because he was located in the NDCA when the suit was instituted.  *See In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) (quotation omitted).  Finally, the current presence of this employee in the WDTX with respect to the -166 case has no bearing on the merits of transferring the other pending actions to the NDCA.

10

*Polaris Innovations*, 2016 WL 7077069 at *5; *see also Collaborative Agreements*, 2015 WL 10818739, at *4 (finding that where key witnesses were located in the NDCA "[t]he proof surrounding Collaborative's theories of infringement and damages will almost certainly lie with Adobe in the Northern District of California.").

Given there are numerous sources of proof in the NDCA and essentially none in the WDTX, this factor clearly favors transfer.

## 2.  Availability of Compulsory Process

Transfer is favored when a transferee forum has absolute subpoena power over a greater number of third party witnesses.  *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1337-38 (Fed. Cir. 2009); *Genentech*, 566 F.3d at 1345; *Wet Sounds*, 2017 WL 4547916 at *3, *report and recommendation adopted*, 2018 WL 1219248.  A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person,"; or (b) "within state where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. Proc. 45(c)(1)(A), (B).  *Gemalto S.A. v. CPI Card Grp. Inc.*, No. CV A-15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015) ("The court holds that for compulsory process, if the action were transferred to Colorado at least one party, CPI Card Group would have compulsory process available to them. The court holds that this factor weighs in favor of transferring this action to Colorado.")  In this regard, the ability to compel live trial testimony is crucial for evaluating a witnesses' testimony.  *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

First, as noted above, Uniloc-affiliated witness Ms. Kiatkulpiboone resides in the NDCA and would be subject to the NDCA's absolute subpoena power.  Second, additional Uniloc witnesses who reside in Southern California, including Mr. Turner and Mr. Etchegoyen, also

11

would be subject to subpoena.  Third, as discussed above, Apple has identified several third parties located in California who also would be subject to NDCA subpoena.  *See* Section IV.A.1.

In contrast, Apple is not aware of a single third-party witness who would be within the WDTX's subpoena power.  Therefore, this factor clearly favors transfer.

### 3.    Attendance of Willing Witnesses

The inconvenience to willing witnesses is the single most important factor in the transfer analysis.  *See Genentech*, 566 F.3d at 1342; *Auto-Drill*, 2016 WL 6909479 at *7.  As noted above in Section II.D,  all of the likely Apple witnesses with knowledge of the Accused Technology are located in the NDCA.  Jaynes Decl., ¶¶ 31-40.  In addition, the likely Apple witnesses on licensing, finance, sales and marketing also are located in the NDCA.  Jaynes Decl., ¶¶ 41-48.  These witnesses are a short car ride from the courthouses in the NDCA (*e.g.*, 15 minutes from San Jose), but more than 1,500 miles and a lengthy plane ride from Austin.  Guaragna Decl., Ex. 12, Google Flights search results.  This length of travel also imposes additional burdens beyond travel time, such as meal and lodging expenses.  *Volkswagen I*, 371 F.3d at 204-05.

On the other hand, other than one Apple engineer who does not possess any unique knowledge, there is not a single relevant witness in the WDTX.  Moreover, Mr. Turner, Uniloc's CFO, lives in southern California, and Mr. Etchegoyen, Uniloc's CEO, lives in both California and Hawaii.  Guaragna Decl., Ex. 1, Gilstrap Order at 17.  For both of these likely Uniloc witnesses, travel to the NDCA actually would be more convenient than travel to the WDTX.  And, as already decided by Judge Gilstrap, there are no full-time employees working at Uniloc's Plano, Texas office with substantive knowledge of Uniloc's business or patents.  *Id.* at 15.

In situations like this, where the vast majority of likely witnesses are in the transferee district, transfer is strongly favored. *Genentech*, 566 F.3d at 1343, *Wet Sounds*, 2017 WL 4547916, at *3, *report and recommendation adopted*, 2018 WL 1219248; *Via Vadis, LLC v. Netgear, Inc.*, No. 14-cv-809, 2015 WL 10818675, at *2 (W.D. Tex. July 30, 2015) (granting motion to transfer in part because the plaintiff "does not have employees knowledgeable regarding the accused products in Texas."); *see also Polaris Innovations*, 2016 WL 7077069, at *9; Guaragna Decl., Ex. 14, Box Transfer Order at 6-7 ("Because most witnesses and evidence are closer to the transferee venue, this factor weighs in favor of transfer.")(quotations omitted).

Uniloc previously has cited Apple's facilities in Austin in attempting to resist transfer to California, and may do so again here. But any such argument would be meritless. Apple does have employees in Austin, but with the exception of a single Apple engineer, none are relevant to these cases. *See* Jaynes Decl., ¶¶ 27, 28, 48-50. Indeed, when faced with this same Uniloc argument in the EDTX cases, Judge Gilstrap found that Apple's facilities in Austin did not weigh in favor of transfer because none of the relevant Apple employees worked in Apple's Austin campus. Guaragna Decl., Ex. 1, Gilstrap Order at 19; *see also Peak Completion Techs., Inc. v. I-TEC Well Solutions, LLC*, 2013 WL 12121002 at *3 (W.D. Tex. June 26, 2013) (finding that the presence of an office and personnel in the district did not weigh against transfer because those individuals were not likely witnesses). The same is true here. *See* Jaynes Decl., ¶¶ 27, 28, 48-50. Accordingly, this factor weighs strongly in favor of transfer. *Volkswagen I*, 371 F.3d at 205.

### 4.  All Other Practical Problems that Make Trial of a Case Easy Expeditious and Inexpensive

Courts weigh a number of case-specific factors in the section 1404(a) analysis but, "at the end of the day, judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice." *XY, LLC*, 2017 WL 5505340, at *14 (citation omitted); *see*

13

*also In re Eli Lilly & Co.,* 541 F. App'x 993, 994 (Fed. Cir. 2013) ("[I]t is entirely within the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest or judicial economy can be of paramount consideration, ... and as long as there is plausible support of record for that conclusion we will not second guess such a determination, even if the convenience factors call for a different result.") (internal quotations and citations omitted).

As noted above, ten Uniloc cases against Apple already have been transferred to the NDCA and are being actively litigated there.  The present cases involve many of the same accused products already at issue in the NDCA Uniloc cases.[8]  In fact, some of the accused technology and relevant witnesses implicated in these cases overlap with the NDCA Uniloc cases.  For example, Uniloc has accused Apple Continuity in one of the present cases and in one of the NDCA Uniloc cases.  Apple witnesses knowledgeable about Apple Continuity, such as Nick Fraioli, are expected to be witnesses in both cases.  Indeed, Mr. Fraioli's deposition is currently scheduled for June 12th in the NDCA.  Guaragna Decl., ¶ 15.  Therefore, judicial economy also weighs heavily in favor of transfer.  *See XY, LLC* 2017 WL 5505340, at *16.  Conversely, because these cases are in their early stages, no practical problems exist that would deter this Court from transferring them to the NDCA.  *See Transunion Intelligence L.L.C. v. Search America, Inc.,* No. 2:10-CV-130, 2011 WL 1327038, at *5 (E.D. Tex. Apr. 5, 2011).

    **B.**    **The Public Interest Factors Favor Transfer**

The public interest factors also strongly favor transfer because the NDCA has a strong local interest in this matter.

---

[8] *See, e.g.,* the *Uniloc v. Apple* cases 5:18-cv-00357, Dkt. 1 at ¶¶ 10, 26, 42, , 5:18-cv-00358, Dkt. 1 at ¶ 10, 5:18-cv-00359, Dkt. 1 at ¶ 10, 3:18-cv-360, Dkt. 1 at ¶ 10, 4:18-cv-00361, Dkt. 1 at ¶ 10, 4:18-cv-00362, Dkt. 1 at ¶ 10, 4:18-cv-00364, Dkt. 1 at ¶¶ 8, 19, 30, 4:18-cv-00365, Dkt. 1 at ¶ 10, 3:18-cv-00572, Dkt. 1 at ¶ 8.

### 1.      Court Congestion favors transfer

The NDCA has a shorter time to trial for patent cases than this District (836 days versus 946 days). Guaragna Decl., Ex. 13, Lex Machina time to trial data; Guaragna Decl., Ex. 14, Box Transfer Order at 8 (NDCA is faster for patent cases). Therefore, this factor favors transfer.

### 2.      Local Interests Strongly Favor Transfer

The NDCA has a strong local interest in this matter because it is the location of Apple's headquarters, where the Accused Products were designed and developed, and, with the exception of one Apple engineer in Austin, where all of Apple's relevant employees are based. *See, e.g., Wet Sounds,* No. 17-cv-141, 2017 WL 4547916, at *4. In contrast, as established above, Uniloc has no connection to the WDTX, but does have many connections to California. Indeed, Judge Gilstrap noted that Uniloc's California office was used to hold "around 100 top level strategy meetings" in the last three years alone, and Uniloc's Luxembourg's CEO holds monthly meetings in California with his CFO. Guaragna Decl., Ex. 1, Gilstrap Order at 6. Therefore, given the many connections to the NDCA and none to the WDTX, this factor strongly favors transfer.

### 3.      Familiarity With The Governing Law And Conflicts Of Law Are Neutral

The last two factors are neutral. There are no perceived conflicts of law and both districts are equally qualified to apply patent law. *In re TS Tech. USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008).

## V.      CONCLUSION

For all the reasons set forth above, Apple respectfully requests that this Court transfer each of the WDTX Uniloc Cases to the NDCA.

Dated:  June 11, 2018        Respectfully submitted,

By:  */s/ John M. Guaragna*
     JOHN M. GUARAGNA (Bar No. 199277)
     john.guaragna@dlapiper.com
     Brian Erickson (Bar No. 24012594)
     brian.erickson@dlapiper.com
     Jeff Cole (Bar No. 24045679)
     jeff.cole@dlapiper.com
     David Xu (Bar No. 24102671)
     David.xu@dlapiper.com
     **DLA PIPER LLP (US)**
     401 Congress Avenue, Suite 2500
     Austin, TX  78701-3799
     Tel:  512.457.7000
     Fax:  512.457.7001

     MARK FOWLER (Bar No. 124235)
     mark.fowler@dlapiper.com
     CHRISTINE K. CORBETT (Bar No. 209128)
     christine.corbett@dlapiper.com
     SUMMER TORREZ (Bar No. 264858)
     summer.torrez@dlapiper.com
     KRISTA A. GREWAL (Bar No. 279526)
     krista.grewal@dlapiper.com
     JONATHAN HICKS (Bar No. 274634)
     jonathan.hicks@dlapiper.com
     **DLA PIPER LLP (US)**
     2000 University Avenue
     East Palo Alto, CA  94303-2214
     Tel:  650.833.2000
     Fax:  650.833.2001

     Larissa Park (Bar No.663105)
     larissa.park@dlapiper.com
     **DLA PIPER LLP (US)**
     33 Arch Street, 26th Floor
     Boston, MA 02110-1447
     Phone: (617) 406-6000
     Fax: (617) 406-6100

16

Andrew Stein (Bar No. NY-4500799)
andrew.stein@dlapiper.com
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Phone: (202) 799-4000
Fax: (202) 799-5000

ATTORNEYS FOR DEFENDANT
APPLE INC.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), counsel for Apple has conferred with counsel for Uniloc in a good-faith effort to resolve the matter presented herein.  Counsel for Uniloc opposes the instant Motion.

*/s/ John M. Guaragna*
John M. Guaragna

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically on June 11, 2018, pursuant to Local Rule CV-5(a) and has been served on all counsel whom have consented to electronic service.  Any other counsel of record will be served by first class U.S. mail on this same date.

*/s/ John Guaragna*
John Guaragna

17