**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UNILOC USA, INC. and | § | |
| UNILOC LUXEMBOURG, S.A., | § | Case Nos.: 1:18-cv-00158-LY |
| | § | 1:18-cv-00159-LY |
| | § | 1:18-cv-00161-LY |
| Plaintiffs, | § | 1:18-cv-00163-LY |
| | § | 1:18-cv-00164-LY |
| | § | 1:18-cv-00166-LY |
| | § | 1:18-cv-00293-LY |
| v. | § | 1:18-cv-00296-LY |
| | § | |
| APPLE INC., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFFS' INITIAL OPPOSITION TO DEFENDANT APPLE INC.'S MOTION TO**
**TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................................... 1

        A.      Apple Ignores Seven of the Eight Cases .................................................. 1

        B.      Apple has an Extensive Presence in Austin, and Elsewhere in this District........... 2

        C.      Austin Is a Reasonable Venue for this National Infringement Action ................... 4

        D.      To Transfer Venue, Courts Require Better Facts than Apple Provides ................. 6

II.     LEGAL STANDARDS ................................................................................................. 8

III.    ARGUMENT ................................................................................................................ 9

        A.      PRIVATE FACTORS .............................................................................. 9

                1.      Ease of Access to Proof ................................................................ 9

                2.      Compulsory Process Over Reluctant Witnesses ....................................... 11

                3.      Cost of Attendance for Willing Witnesses ...................................... 15

                4.      Other Practical Considerations ...................................................... 16

        B.      PUBLIC FACTORS ................................................................................ 16

                1.      Court Congestion .......................................................................... 16

                2.      Local Interest ................................................................................ 17

                3.      Familiarity with the Governing Law............................................. 17

                4.      Conflicts of Laws .......................................................................... 17

IV.     CONCLUSION............................................................................................................ 17

TABLE OF AUTHORITIES

**Cases**

*ADS Sec. L.P. v. Adv. Detection Sec. Servs., Inc.*,
  2010 WL 1170976 (W.D. Tex. Mar. 23, 2010) ........................................................ 9

*Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*,
  228 F.3d 544 (5th Cir. 2000) ................................................................. 13

*Clark v. Kellogg Brown & Root, LLC*,
  2008 WL 11357986 (E.D. Tex. Jan. 14, 2008) ........................................................ 13

*Core Wireless Licensing, S.A.R.L. v. Apple Inc.*,
  No. 6:12-cv-100-LED-JDL, 2013 WL 682849 (E.D. Tex. Feb. 22, 2013) ....................... 11, 12

*Core Wireless Licensing, S.A.R.L. v. Apple Inc.*,
  No. 6:14-cv-751, 2015 WL 11143431 (E.D. Tex. Aug. 31, 2015) ................................... 6

*e-Watch, Inc. v. Apple Inc.*,
  2016 WL 7338342 (E.D. Tex. Dec. 19, 2016) ......................................................... 13

*Gellman v. ADT Sec. Servs., Inc.*,
  2008 WL 4280351 (E.D. Tex. Sept. 10, 2008) ........................................................ 17

*GSK Techs., Inc. v. Schneider Elec., S.A.*,
  2007 WL 788343 (E.D. Tex. Mar. 14, 2007) ......................................................... 17

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947) .......................................................................... 8

*Healthpoint, Ltd. v. Derma Sciences, Inc.*,
  939 F. Supp. 2d 680 (W.D. Tex. 2013) ............................................... 1, 12, 13, 14, 15

*In re Apple Inc.*,
  743 F.3d 1377 (Fed. Cir. 2014) ............................................................... 11

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ............................................................... 8

*In re Volkswagen of Am., Inc.*,
  566 F.3d 1349 (Fed. Cir. 2009) ............................................................... 8

*In re Volkswagen of America Inc.*,
  545 F. 3d 304 (5th Cir. 2008) ............................................................. 5, 8

*Invitrogen Corp. v. Gen. Elec. Co.*,
  2009 WL 331889 (E.D. Tex. Feb. 9, 2009) ........................................................ 12

*MacroPoint, LLC v. Ruiz Food Prods., Inc.*,
  2017 WL 3722053 (E.D. Tex. Aug. 29, 2017) ...................................................... 12

*Mears Techs. v. Finisar*,
  2014 WL 1652603 ........................................................................... 16

*MobileMedia Ideas LLC v. HTC Corp.*,
  No. 2:10-cv-112-JRG, 2012 WL 1570136 (E.D. Tex. May 3, 2012) ................................. 12

*Operating Sys. Sols., LLC v. Apple Inc.*,
    No. 8:11-cv-1754-T, 2012 WL 12906518 (M.D. Fla. Jan. 30, 2012)......................................... 10

*Personal Audio, LLC v. Apple Inc.*,
    No. 9:09-cv-111, 2010 WL 582540 (E.D. Tex. Feb. 11, 2010).......................................... 12, 14

*Portal Techs., LLC v. Yahoo! Inc.*,
    2012 WL 3242205 (E.D. Tex. Aug. 7, 2012) ........................................................................ 16

*Smartflash, LLC v. Apple Inc.*,
    2014 WL 11071873 (E.D. Tex. Apr. 4, 2014) ...................................................................... 13

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988)................................................................................................................. 1

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
    137 S. Ct. 1514 (2017)........................................................................................................... 4

*TracBeam, LLC. v. Apple Inc.*,
    No. 6:14-cv-680, 2015 WL 5786449 (E.D. Tex. Sept. 29, 2015)........................................... 6

*Uniloc v. Box*,
    2018 WL 2729202 ......................................................................................................... 16, 17

*VirtualAgility, Inc. v. Salesforce.com, Inc.*,
    2014 WL 459719 (E.D. Tex. Jan. 31, 2014) ....................................................................... 13

*Virtualagility, Inc. v. Salesforce.com, Inc.*,
    No. 2:13-cv-00011-JRG, 2014 WL 459719 (E.D. Tex. Jan. 31, 2014) .................................. 12

## Statutes

28 U.S.C. §1400(b) ........................................................................................................................ 4

28 U.S.C. §1404(a) ..................................................................................................................... 5, 8

## Rules

Fed. R. Civ. P. 45(a)(2) ............................................................................................................... 12

Fed. R. Civ. P. 45(c)(1) ............................................................................................................... 12

Plaintiffs, Uniloc USA, Inc. and Uniloc Luxembourg, S.A. (together "Uniloc"), respectfully submit this Initial Opposition to the motion of defendant, Apple Inc. ("Apple"), to transfer venue to the Northern District of California ("NDCA"), pursuant to 28 U.S.C. §1404(a) ("Mot." or "Motion").[1]  As Uniloc had not had the opportunity to determine facts concerning Apple's activities at its Austin facilities, the Court has ordered the parties to submit, by July 10, 2018, a proposal for developing a complete factual record for this motion.  After that development is completed, Uniloc will be in a position to supplement this Initial Opposition.

## I.    INTRODUCTION

### A.    Apple Ignores Seven of the Eight Cases

Apple moves to change venue in all eight of these actions.  But in only one (-166 case) do the *patents* have any connection with California.  In that action, the sole inventor on the asserted patents, Daniel Lin, and his patent attorneys, apparently reside in the NDCA.  Apple thus seizes upon the California connection of the patents in that single case. *See*, *e.g.*, Mot. at 8-9.

Notably, however, Apple omits from its motion the corresponding facts regarding the patents at issue in the other <u>seven</u> cases.  Those patents have no California connection whatever. Of the nine inventors named on the patents in those seven cases, five reside in Great Britain, one in Germany, one in France, and the remaining two in upstate New York. *See* Ex. A.[2]  Those locations are obviously much closer to this Court than to the NDCA.  The attorneys who prosecuted those patents reside on the East Coast of the United States – also obviously closer to

---

[1] Apple filed a combined motion to transfer these eight cases.  To avoid potential confusion, Uniloc files this combined response, with the caveat that motions to transfer must be decided on an "individualized, case-by-case" basis. *Healthpoint, Ltd. v. Derma Sciences, Inc.*, 939 F. Supp. 2d 680, 684 (W.D. Tex. 2013)  (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

[2] Unless otherwise noted, all exhibits referred to herein are attached to the accompanying Declaration of Kevin Gannon.

this Court than to the NDCA. *See infra.*  The original assignee corporations that filed and prosecuted the applications for the patents in those seven cases are also located in Europe or on the East Coast. *See* Ex. A.

If, as Apple contends in *one* of the eight actions, the Court should consider the residence of inventors and patent attorneys, Apple should have disclosed that in the other *seven* of the eight cases none of the inventors or patent attorneys resides in the NDCA and *all* reside closer to Austin than to California.

**B.**      **Apple has an Extensive Presence in Austin, and Elsewhere in this District[3]**

In determining whether this District and the Austin Division is an appropriate venue, the Court will doubtless consider the ties that Apple has to this location and District.  On that point, Apple maintains extensive and "very critical" facilities right here in Austin.  Among its locations here is a "massive" 1.1 million-square-foot campus in North Austin, as well as a smaller 216,000 square foot campus in southwest Austin. *See* Ex. B, p. 1.  Apple has more than 6,000 employees at the Austin facilities. *See id.* Exs. B, p. 1 & C, p. 1.  According to Apple's Senior Vice President of Hardware Technologies, the Austin employees "play a very critical and integral role – they are designing chips that go into all the devices we sell." *See* Ex. B, p. 1.

"[T]he hardware engineering center in Austin may be the most important in Apple's expansion." *Id.*  Chips designed by Apple in Austin "are included in 'hundreds of millions of devices' that Apple sells each year." *Id.*  These include "the company's 'A'-series processors as well as other components for the iPhone and iPad" that are accused of infringement in these

---

[3] As discussed at the June 12 conference, Uniloc had not, as yet, had the opportunity to discover the full range of Apple's activities in Austin, and elsewhere in this District.  The information in this section has thus been garnered from publicly available sources.  Uniloc will supplement this information after completing its Court-ordered discovery.

cases. *Id.*  Moreover, Apple's Austin campus "is responsible for running the company's business operations for the entire Western Hemisphere." *See* Ex. D.

In reality, Austin is Apple's "base for microchip design." *See* Ex. B, p. 1.  Apple employees in Austin "are hard at work on some of Apple's most important products." *Id.*  Apple aims to become "the second-largest technology employer in central Texas, behind only Dell, Inc." *See* Ex. D, p. 3.  Apple's 6000 Austin employees include at least 500 engineers who "work on the chips that will run the next round of Apple's products." *See* Ex. E, p. 1.  Other employees here "continuously update" software that is "integral to iPhones and iPads," which are accused products in these cases. *See* Ex. E, p. 1.  At Apple's "sparkling new complex in northwest Austin, workers who are spread throughout seven limestone-and-glass buildings field about 8,000 customer tech support calls a day." *Id.*  Those field calls would presumably include technical instruction to customers to operate functionalities that infringe the patents in suit. Other of Apple's Austin employees "manage the company's vast network of suppliers and figure out how to move around millions of iPhones a week to ensure they get into the hands of customers when they want them," *id.*, an issue relevant to the issue of sales of the infringing products.

Apple has publicly announced that, excluding benefits and stock compensation, the average salary of its Austin employees, including management, is $77,000 a year. *Id.* Thus, with over 6000 employees, Apple's annual Austin payroll exceeds $460 million.  In furtherance of its decision to create its second largest facility in the Austin Division, Apple is receiving $35 million in tax incentives from the local city, county, and state governments. *See* Ex. B, p. 1. According to its Chief Executive Officer, Apple's team in Austin "is a ***very critical*** part of [the] company." Ex. F, p. 1 (emphasis added).

3

In addition to the people on its payroll in Austin, Apple has 350 suppliers of iPhone and iPad components in Texas. *See* Ex. E, p. 3.  Apple partners with these companies in Texas to source materials and components for its products.  These include Samsung, which has provided iPhone chips from its Austin factory for inclusion in Apple's accused infringing products. *See* Ex. G, p. 2.  Apple's CEO has recently also announced that the FaceID module on the iPhone X will be built in Texas. *See* Ex. H, p. 2.  Apple also contracts numerous other local suppliers, *see infra*, including an Austin company, Flex, for the assembly of its Mac Pro computers in this Division. *See* Ex. E, p. 3.  In addition, Apple has two retail establishments in Austin, as well as two in San Antonio, and one in El Paso, all in this District. *See* Jaynes Decl. (Dkt. No. 34-2), ¶ 27.[4]

## C.  Austin Is a Reasonable Venue for this National Infringement Action

The Supreme Court has recently sharply limited the venues in which a patent action may be filed, *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017), requiring filing in either the defendant's state of incorporation, or in a district in which it has an established place of business and has committed acts of infringement, as required by 28 U.S.C. §1400(b).  But Apple does not deny or dispute that Uniloc properly brought this action in this District or in the Austin Division.  As discussed above, Apple has large "brick-and-mortar" business establishments in this area, and an enormous Austin workforce.  Further, the number of accused acts of infringement that have occurred or will occur in this District may reach the millions.  Nor does Apple suggest that Uniloc's filing of these cases here in Austin creates economic pressure on Apple or gives Uniloc unfair advantage.  Thus, on its face, Austin is a

---

[4] Unless otherwise noted, all docket entries referred to herein are filings in the above-captioned -158 case.

completely reasonable, convenient, and fair location for Apple to defend a patent infringement action.

Nonetheless, Apple moves to change venue under the "convenience" statute, 28 U.S.C. §1404(a), claiming that Apple would find it *inconvenient* to try the case here. According to Apple, the only location sufficiently *convenient* for Apple would be a courthouse in the NDCA located near its corporate headquarters in Cupertino, California. But this is not a "local" action, such as the seminal case, *In re Volkswagen of America Inc*., 545 F. 3d 304 (5th Cir. 2008) (en banc), where the Fifth Circuit ordered transferred, from the Marshall Division to the Dallas Division, a tort action arising out of an automobile accident because the accident occurred in Dallas, where witnesses to the accident, as well as the police and emergency personnel witnesses responding to that accident, all resided. Such "local" actions are the types of cases to which Congress primarily directed §1404(a), when it passed that statute in 1948 to eliminate the doctrine of *forum non conveniens* in the federal courts.

By contrast, the actions here are not "local," either as to California or Texas. They are patent infringement actions as to products imported, not from California but from Asia, and sold nationwide over the Internet as well as in a vast number of Apple retail outlets throughout the United States. Although manufactured in Asia, the accused products incorporate parts that are manufactured in various locations in the United States, including in and around Austin.

The issue here, for Apple, is obviously not convenience, as it spent more money simply preparing the venue motion than it would spend flying a witness from California to testify at trial. The issue is perceived home-court advantage in the NDCA. Apple does not like the Texas courts, or Texas juries. For example, two months ago, a jury in the Eastern District of Texas

found that Apple's VPN and Facetime products infringed four patents owned by VirnetX, Inc. and awarded $502,000,000 in damages. *See* Ex. I.

When sued for patent infringement in Texas, Apple routinely moves to change venue to where it perceives its own home-court advantage, the NDCA.  Sometimes those motions have been granted, sometimes they have been denied.  But as Apple's presence in Texas – especially in Austin and elsewhere in this District – mushrooms to the point where it is has become one of the largest employers in the area, Apple can no longer deny that this District is convenient or be allowed to decide where it can be sued.

### D.      To Transfer Venue, Courts Require Better Facts than Apple Provides

Due to Apple's position in the industries in which it is the market leader, it has been, and will continue to be, a defendant in numerous patent infringement litigations around the United States.  In response, Apple has developed a clever strategy to attempt to manipulate venue and steer all of those actions to NDCA, which its motion papers here exemplify.  In each case, Apple provides a declaration (here, the Michael Jaynes declaration) giving the names of specific employees working in its Cupertino headquarters and averring those employees are "knowledgeable about the relevant design and operation of the Accused Products, including their research and development."  The same declaration is made in other cases. *See*, *e.g.*, *Core Wireless Licensing, S.A.R.L. v. Apple Inc.*, No. 6:14-cv-751, 2015 WL 11143431, at *5 (E.D. Tex. Aug. 31, 2015); *see also TracBeam, LLC. v. Apple Inc.*, No. 6:14-cv-680, 2015 WL 5786449, at *5 (E.D. Tex. Sept. 29, 2015).  The declaration also gives the names of several specific employees working in its Cupertino headquarters who are "knowledgeable about any marketing" of the accused products.

The motion papers then refer to these individuals - in Apple's employ - as "likely witnesses" and argue the action should be transferred for *their* convenience.[5]  Knowledgeable Apple employees elsewhere, including those thousands of Apple employees in Austin, are described as not having "unique" knowledge.  For example, following the Apple playbook in this case, Mr. Jaynes states as follows:

> Apple has non-retail offices in Austin, Texas (the WDTX) and Dallas, Texas (the Northern District of Texas).  To the best of my knowledge and after reasonable investigation, no employees in these offices currently have responsibilities for the design, development or implementation of the Accused Technology based on Apple's current understanding of Uniloc's infringement contentions or are likely to have **unique documents or information relevant to this case**.

Jaynes Decl. (Dkt. No. 34-2), ¶ 28 (emphasis added).

Lacking discovery, plaintiffs are usually in no position to contradict those self-serving averments.[6]  If all that needs to be shown to persuade a court to transfer a national infringement action out of Texas, however, is that the defendant has employees knowledgeable about the design, operation, and marketing of the accused products at its corporate headquarters, then not only Apple, but *every* non-Texas major corporation accused of infringement will play the same "get out of Texas free" card, irrespective of the magnitude of its presence here.  Apple's argument that these cases should be transferred to the location of its corporate headquarters should be rejected.  As Judge Gilstrap recently stated, such an argument would result in a "patently absurd result":

> The Federal Circuit has stated that "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the

---

[5] The Court is no doubt aware that, when a patent case comes to trial, transfer movants rarely call as witnesses the individuals they name in their venue motion papers.  Apple's practices in this regard will be included in the upcoming discovery.

[6] Here, the Court has ordered that Uniloc may take venue-related discovery.

place where the defendant's documents are kept weighs in favor of transfer to that location."

\* \* \*

However, as other courts have noted, a rigid application of this isolated statement from *Genentech* "would seem to require the transfer of every patent infringement action from the district of the victim to the district where the defendant is located, a patently absurd result."

*See* Dkt. No. 34-4 at 12 (citations omitted).

## II.   <u>LEGAL STANDARDS</u>

Pursuant to 28 U.S.C. §1404(a), a civil action may be transferred to another court "[f]or the convenience of the parties and witnesses [and] in the interest of justice." The party requesting transfer under Section 1404(a) must demonstrate that the transferee venue is "clearly more convenient." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). Absent such a showing, the plaintiff's choice of forum is to be respected. *Id.* at 314-15

In considering whether the movant has met this burden, the court considers a number of public and private factors. *In re Genentech, Inc.*, 566 F.3d 1338, 1341-42 (Fed. Cir. 2009) (citing *Volkswagen II*, 545 F.3d at 315)).[7]  In addition, although it is not one of the enumerated public or private factors, the Court may also consider judicial economy. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (*Volkswagen III*").  "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

The private factors include: (1) the relative ease of access to proof; (2) the availability of compulsory process to secure witness attendance; (3) the cost of attendance for willing

---

[7] Uniloc does not dispute that these cases could have been filed in the NDCA.

witnesses;[8] and (4) all other practical problems that make trial of a case easy. *Volkswagen II*, 545 F.3d at 315.  The public factors include: (1) administrative difficulties resulting from court congestion; (2) local interest in having localized interests decided at home; (3) familiarity of the forum with the governing law; and (4) avoiding conflict of law problems. *Id*.  In addition, the plaintiff's choice of forum may be given deference. *Id*.  No single factor is dispositive. *Id.* at 314-15.

## III.    ARGUMENT

Apple has the burden of proving that the NDCA is "clearly more convenient" than this Court. *Volkswagen II*, 545 F.3d at 315.  As set forth below, Apple has not met its burden in this case and the Motion should be denied.

### A.    PRIVATE FACTORS

#### 1.    Ease of Access to Proof

As it has in all motions that it files to transfer known to Uniloc, Apple argues that transfer is warranted because all of its relevant "documents" are located at its headquarters in the NDCA. But, as the accompanying Foster Declaration proves, the argument is misleading.  In its 11 other suits with Uniloc, after making the identical argument, Apple ended up producing zero "documents" or electronically stored information in NDCA.  All productions were electronically produced from Apple counsels' offices (in Chicago and Denver) to Uniloc's counsel (in Boston). Similarly, Apple insisted on producing its source code for inspection in Chicago (and Denver), even refusing Uniloc's request to conduct the inspection at Apple's headquarters in Cupertino.

---

[8] The convenience of Apple's employee-witnesses in the NDCA is "given little weight" under this factor. *See ADS Sec. L.P. v. Adv. Detection Sec. Servs., Inc.*, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), adopted in A-09-CA-773-LY (Dkt. No. 20) (Apr. 14, 2010).

*See* Foster Decl., ¶ 2.[9]  The world has changed from the time, many years ago, when hard copy documents were common.  In patent cases in 2018 in this industry, virtually no party produces hard copy documents, and the location of servers has zero relationship to convenience. Foster Decl., ¶ 3.

Apple argues that the inventor (and the prosecuting attorneys) on the patents in *one* of the eight actions, the −166 case, (Daniel Lin) reside in the NDCA. Mot. at 8.  As set forth in the Introduction above, however, Apple ignores the numerous inventors named on the patents in the other *seven* cases.  As indicated on those patents, the inventors and the original assignees are located well outside the NDCA, and all are closer to Austin than the NDCA.  *See* Exs. A & J.  Likewise, the attorneys prosecuting the patents in the other seven actions are all on the East Coast. *See* Ex. K.

Apple also argues that San Diego-based Qualcomm and NDCA-based Intel employ witnesses having relevant evidence relating to the accused MAC and PHY layer functionality.  Mot. at 9.  In support, Apple cites Guaranga Declaration Exhibits 10-11 and paragraphs 33-36 of the Declaration of Michael Jaynes. *Id.*  Nowhere in those exhibits or testimony is there any identification of any Qualcomm or Intel employee.  Thus, as in prior litigation involving an unsuccessful Apple motion to transfer to the NDCA, such evidence must be discounted:

> Again, Apple has failed to identify any willing witnesses and states only that "Apple's likely witnesses are located in the Northern District of California." Apple fails to identify employees with knowledge of the accused systems, the accused system's marketing, or the accused system's financial details.

---

[9] In actions not involving Uniloc, Apple also produces source code for inspection during litigation at offices located far from the NDCA. *See, e.g.*, *Operating Sys. Sols., LLC v. Apple Inc.*, No. 8:11-cv-1754-T, 2012 WL 12906518, at *3 (M.D. Fla. Jan. 30, 2012) ("Apple explicitly designated New York as the location for discovery of the source code for its software.") Accordingly, it cannot be inconvenient for Apple to bring its source code to trial in this Court, closer to the NDCA than New York, particularly when it can be downloaded at Apple's own (presumably secure) facilities in Austin.

* * *

> As it stands, it has been presented that there may be witnesses related to **Intel and Qualcomm**, and their willingness and location is presently unknown to the Court. While the Court acknowledges that Apple's unknown witnesses who are claimed to be in the Cupertino area would have to travel to attend trial in this District, it cannot weigh this factor without identification of those individuals.

*Core Wireless Licensing, S.A.R.L. v. Apple Inc.*, No. 6:12-cv-100-LED-JDL, 2013 WL 682849, at *4 (E.D. Tex. Feb. 22, 2013) (citation and footnote omitted; emphasis added).  As the Federal Circuit denied Apple's ensuing petition for *mandamus, see In re Apple Inc.*, 743 F.3d 1377, 1378-89 (Fed. Cir. 2014) (noting Apple's failure to identify witnesses), Apple's argument regarding unnamed Qualcomm and Intel witnesses should likewise be rejected here.

As set forth in the Introduction *supra*, there are numerous sources of proof in this District and elsewhere in Texas.  The discovery the Court has permitted Uniloc to take will reveal the names of these entities and witnesses.  For now, however, from public sources Uniloc is aware that an Austin company, Flex, assembles Apple accused products here. *See* Ex. E, p. 3.  In addition, Apple has 350 suppliers of iPhone and iPad components in Texas. *Id.*  These include Samsung, which has provided chips from its Austin factory for inclusion in Apple's accused infringing products. *See* Ex. G.  Other third-party component suppliers to Apple who will have relevant documentation and are located in or around this District include: NXP (Austin), Qorvo (Richardson), Synopsis (Plano), ST (Coppell), Cirrus Logic (Austin) and Texas Instruments (Dallas). *See* Exs. N-S.  Thus, as discovery will demonstrate, numerous sources of third-party proof exist in and around this District.

### 2.     Compulsory Process Over Reluctant Witnesses

Apple devotes less than a page of its brief to this factor. *See* Mot. at 11-12.  This factor requires consideration of the availability of compulsory process over witnesses "whose

attendance may need to be secured by a court order." *Virtualagility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (citing *Volkswagen II*, 545 F.3d at 316). Nonetheless, "[w]here the party seeking transfer 'only vaguely refer[s] to potential witnesses,' transfer is not warranted." *MobileMedia Ideas LLC v. HTC Corp.*, No. 2:10-cv-112-JRG, 2012 WL 1570136, at *5 (E.D. Tex. May 3, 2012) (citation omitted).

The only third-party witnesses Apple identifies by name are Ms. Kiatkulpiboone and Messrs. Turner and Etchegoyen. Mot. at 11.[10] Messrs. Turner and Etchegoyen are not counted in this analysis because, as officers or employees of Uniloc, this Court can order their presence to testify here at trial. *See*, *e.g.*, *Personal Audio, LLC v. Apple Inc.*, No. 9:09-cv-111, 2010 WL 582540, at *4 (E.D. Tex. Feb. 11, 2010). In addition, Apple has presented no evidence that any of these three witnesses would refuse to testify at trial in the NDCA absent service of a trial subpoena. Thus, Apple's compulsory process argument should be rejected. *See Healthpoint v. Derma Sciences*, 939 F. Supp. 2d at 680; *see also MacroPoint, LLC v. Ruiz Food Prods., Inc.*, 2017 WL 3722053, at *3 (E.D. Tex. Aug. 29, 2017) ("Ruiz does not indicate that 'any of [these witnesses] would be unwilling to testify at trial'") (quoting *Invitrogen Corp. v. Gen. Elec. Co.*, 2009 WL 331889, at *3 (E.D. Tex. Feb. 9, 2009)).

Furthermore, courts have nationwide subpoena power to compel a nonparty witness's attendance at a deposition within 100 miles of their residence or workplace pursuant to Fed. R. Civ. P. 45 (a)(2) and (c)(1). "The Fifth Circuit views a videotape deposition as an acceptable substitute for live testimony." *e-Watch, Inc. v. Apple Inc.*, 2016 WL 7338342, at *3 (E.D. Tex.

---

[10] Apple states that it, in section IV.A.1 of its brief, has identified additional third parties in California, *i.e.* Qualcomm and Intel. Mot. at 12. As set forth above, notwithstanding its years of collaboration with those entities, Apple has again failed to name any individual from those companies who may have relevant information. Accordingly, as in *Core Wireless v. Apple* cited above, Apple's argument regarding Qualcomm and Intel should be rejected.

Dec. 19, 2016) (citing *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000)); *see also VirtualAgility, Inc. v. Salesforce.com, Inc.*, 2014 WL 459719, at *5 (E.D. Tex. Jan. 31, 2014).

Apple has not attempted to show why such deposition testimony would not suffice in these cases. *See*, *e.g.*, *Healthpoint v. Derma Sciences*, 939 F. Supp. 2d at 692 ("to the extent that these witnesses may provide relevant evidence, [defendant] has not suggested that such evidence could not be obtained through videotaped depositions"); *Smartflash, LLC v. Apple Inc.*, 2014 WL 11071873, at *8 (E.D. Tex. Apr. 4, 2014) ("Apple has not addressed how it would be prejudiced by presenting depositions instead of live testimony for these witnesses");[11] *see also Clark v. Kellogg Brown & Root, LLC*, 2008 WL 11357986, at *2 (E.D. Tex. Jan. 14, 2008) (where defendants "have failed to announce a desire to have these witnesses testify in person," they have failed to prove this factor favors transfer).  Thus, Apple has failed to demonstrate that compulsory process will be required.

In any event, there are also numerous witnesses located in and around this District that are subject to this Court's trial subpoena power. *See*, *e.g.*, Mot. at 9 n. 7 (identifying Austin-based Apple engineer Stuart Montgomery).  In addition, Samsung (Apple chip supplier), Flex (Apple Mac Pro computer assembler) and six other suppliers (NXP, Qorvo, Synopsis, ST, Cirrus Logic and Texas Instruments) are located in and around this District and subject to the deposition and trial subpoena power of this Court. *See supra*.  Further, the thousands of Apple employees in Austin, some of whom must have knowledge relevant to trial of these cases, are subject to the trial subpoena power of this Court.  Apple's general statement that not a single Austin employee

---

[11] As the Court also stated in *Smartflash*, deposing California-based third-parties in California, where Apple is headquartered, "should not be inconvenient for Apple." *Id.*, at *7.

has information relevant to any of these eight cases will not survive discovery.  For example,

Apple's "Jobs at Apple" website currently list 58 openings for hardware engineers to work on

iPhone, iPad, and Mac technology at Apple here. *See* Ex. L.  Among the open hardware

engineering jobs are:

- Senior System-On-a-Chip Design Verification Engineer;

- Senior Analog Layout Designer;

- System-On-a-Chip Integration Engineer;

- Formal Design Verification Engineer;

- Physical Design Engineer;

- Graphics Design Verification Engineer.

*Id.*  These iPhone, iPad, and Mac-related job openings strongly suggest that numerous engineers

already employed at Apple's Austin facilities are knowledgeable regarding the design, operation,

and functionality of the accused iPhone, iPad, and Mac products.  Apple also has non-technical

witnesses working at its Austin facilities. *See*, *e.g.*, *Personal Audio v. Apple*, 2010 WL 582540,

at *1 ("Apple's Operations and Sales divisions operate out of the Austin campus").  Discovery

will no doubt disprove Apple's argument that all of its knowledgeable witnesses are located

exclusively in the NDCA.[12]

    Finally, Apple has 350 suppliers located in Texas subject to the subpoena power of this

Court. *See* Ex. E, p.3.  The discovery the Court has permitted Uniloc to take regarding the

---

[12] Apple again argues that there is no "unique" source of relevant proof in this District. Mot. at 9.
But sources of proof in this District do not have to be "unique" to be considered in the transfer
analysis. *See*, *e.g.*, *Healthpoint v. Derma Sciences*, 939 F. Supp. 2d at 691.

present motion will allow Uniloc to discover from Apple the locations and relationships of these suppliers with Apple, and show a number of these suppliers will have relevant information.

### 3.   Cost of Attendance for Willing Witnesses

Of course, this motion was not filed to solely to save Apple the cost of attendance of one or two witnesses at trial in this Court.  Whatever sum that cost would amount to has already been well exceeded by the cost of briefing and arguing this motion.  Apple filed the motion to get out of Texas, period.  It does not like the Texas courts or their juries.  This is a national, not a local, action.  The Austin Division is an appropriate venue to try a national infringement action, where the defendant has over 6000 employees and a $470 million annual payroll in the Division.

Apple argues that "all of the likely Apple witnesses with knowledge of the accused Technology are located in the NDCA." Mot. at 12.  To the extent that the Court decides to consider this "cost of attendance" factor in this national infringement action, "it is the convenience of *non-party* witnesses, rather than of party witnesses, that is more important and accorded greater weight in a transfer of venue analysis." *Healthpoint v. Derma-Sciences*, 939 F. Supp. 2d at 690 (citation omitted).  Uniloc has identified numerous third parties in and around this District, *e.g.*, Samsung, Flex and other Apple suppliers to be identified after discovery for which trial in this Court would be much more convenient and cheaper than attending trial in the NDCA.  As set forth in the charts attached as exhibits J and K to the Gannon declaration, the location of inventors and patent attorneys for seven of the cases are all closer to this Court than to the NDCA.  Thus, this factor, if considered at all, weighs against transfer.

As demonstrated by the establishment, expansion and maintenance of its facilities in Austin, Apple finds it very convenient to do business in this District.  As Apple's declarant admits, it also maintains five retail establishments in this District, two of which are located in

Austin. *See* Jaynes Decl. (Dkt. No. 34-2), ¶ 27.  Thus, Apple would not find it inconvenient to fly one or two employee-witnesses here for trial.  Many employees undoubtedly travel routinely between its Austin facilities and Cupertino.  As of September 30, 2017, Apple had over $20 billion in cash and equivalents into which it can dip to pay for flights and a few days of meals and lodging during trial in Austin. *See* Ex. M.  Moreover, as set forth *infra*, the courts have previously found that the cost of food and lodging for trial is "substantially less" in Texas than in the NDCA. *See*, *e.g.*, *Mears Techs. v. Finisar*, 2014 WL 1652603, at *3 (E.D. Tex. Apr. 24, 2014); *see also Portal Techs., LLC v. Yahoo! Inc.*, 2012 WL 3242205, at *3 (E.D. Tex. Aug. 7, 2012).  As Apple employees routinely travel between its headquarters in the NDCA and its "massive" facilities in Austin, travel to Texas for Apple is cheap and routine, not inconvenient.

### 4.     Other Practical Considerations

Apple argues that judicial economy would be served by transfer because Judge Gilstrap recently transferred ten *Uniloc v. Apple* cases to the NDCA. Mot. at 13-14.  But none of those cases involve the patents asserted in these eight cases.  Moreover, none of the inventors named on the NDCA case patents is named as an inventor on any of the patents asserted here.  Thus, judicial economy does not favor transfer.

### B.     PUBLIC FACTORS

Apple has not shown that any of the public factors favors transfer.

### 1.     Court Congestion

Less than a month ago in the *Uniloc v. Box, Inc.* litigation, in which Box moved to transfer to the NDCA, the Court found that "this factor weighs against transfer, but only slightly." *Uniloc v. Box*, 2018 WL 2729202, at *4 (W.D. Tex. Jun. 6, 2018).

2.      Local Interest

On this factor, Apple simply ignores Uniloc is a Texas corporation. *See* Mot. at 15.

Texas courts have a "significant interest" in protecting the intellectual property of Texas

corporations. *See*, *e.g.*, *Uniloc v. Box*, 2018 WL 279202, at *4 ("the State of Texas has a

significant interest in preventing patent infringement within its borders and in protecting the

rights of its citizens.") (quoting *GSK Techs., Inc. v. Schneider Elec., S.A.*, 2007 WL 788343, at

*4 (E.D. Tex. Mar. 14, 2007)); *see also Gellman v. ADT Sec. Servs., Inc.*, 2008 WL 4280351, at

*5 (E.D. Tex. Sept. 10, 2008) (citizens of forum district "have a substantial interest in whether

acts of patent infringement have occurred in this District and in the State of Texas.")  Thus, this

Court has a local interest in resolving this patent infringement dispute.

3.      Familiarity with the Governing Law

4.      Conflicts of Laws

These factors are neutral. *See* Mot. at 15.

## IV.    **CONCLUSION**

Apple has failed to show that the NDCA is "clearly more convenient."  The Court should

deny the motion to change venue.  Uniloc submits herewith a proposed Order to that effect.

Dated: June 26, 2018                    Respectfully submitted,

                                        */s/ Kevin Gannon*_____
                                        Paul J. Hayes
                                        phayes@princelobel.com
                                        Kevin Gannon
                                        kgannon@princelobel.com
                                        **PRINCE LOBEL TYE LLP**
                                        One International Place - Suite 3700
                                        Boston, MA 02110
                                        Tel: (617) 456-8000
                                        Fax: (617) 456-8100

                                        Edward R. Nelson III
                                        ed@nelbum.com
                                        Texas State Bar No. 00797142
                                        Anthony M. Vecchione
                                        anthony@nelbum.com
                                        Texas State Bar No. 24061270
                                        **NELSON BUMGARDNER ALBRITTON PC**
                                        3131 West 7th Street, Suite 300
                                        Fort Worth, TX 76107
                                        Tel: (817) 377-9111
                                        Fax: (817) 377-3485

                                        **ATTORNEYS FOR THE PLAINTIFFS**


                            CERTIFICATE OF SERVICE

        I hereby certify that all counsel of record who have consented to electronic service are
being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-
5(b)(1) on June 26, 2018.

                                        */s/ Kevin Gannon*_____